UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARION MICHAEL O'STEEN,

    Petitioner,

v.       Case No. 5:24-cv-25-WFJ-PRL

WARDEN, FCC COLEMAN – LOW,

    Respondent.
_____/

## ORDER

Before the Court is Marion Michael O'Steen's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1), the Warden of FCC Coleman–Low's Response (Doc. 9), and Petitioner's Reply (Doc. 10). After careful consideration, the Court denies the Petition.

## BACKGROUND

In June 2022, a jury found Petitioner guilty of interference with commerce by extortion under color of official right, in violation of 18 U.S.C. § 1951(a)(2), and failure to file form 8300, in violation of 31 U.S.C. §§ 5331 and 5322. *See* Case No. 3:21-cr-16-MMH-JBT (M.D. Fla.) ("Criminal Case") at Docs. 162, 215. Petitioner was sentenced to forty-four months in prison, followed by three years of supervised release. (Criminal Case, Doc. 215). On April 5, 2024, Petitioner's Motion to Reduce Sentence

re Amendment 821 was granted, and his term of imprisonment was reduced to thirty-six months. (Criminal Case, Doc. 268).

Petitioner claims his due process rights were violated during his disciplinary proceedings that resulted in the loss of 41 days of Good Time Credit and 150 days of First Step Act time credits. (Doc. 1 at 6, 12–13). Respondent requests that the Petition be dismissed because Petitioner failed to exhaust his administrative remedies, or in the alternative, deny the Petition because Petitioner has received all required due process throughout the disciplinary process. (Doc. 9).

**Incident Report No. 3722549**

On January 11, 2023, staff at Montgomery FPC became aware of an incident involving inmates and a cellular phone. (Doc. 9-1 at 8–10). On February 10, 2023, a SIS investigation concluded that Petitioner and another inmate did possess and use the cell phone. *Id*. Three calls were placed to a redacted telephone number on January 5, 2023, at 2:33 p.m., 2:33 p.m., and 2:35 p.m. The TRUVIEW system shows that Petitioner is the only inmate at Montgomery FPC to be associated with that telephone number. Petitioner had the redacted name listed on his telephone list and has been identified as using this number. During an interview, Petitioner admitted to using the phone. *Id*. at 8. Petitioner was issued an incident report for violating Bureau of Prisons ("BOP") Code 199, Disruptive Conduct–Greatest, most like a 108 Possessing a hazardous tool. *Id*.

Petitioner was given a copy of the incident report the same day it was written. *Id*. An investigator was assigned to investigate the charge and interview Petitioner. *Id*.

2

at 10. Petitioner was advised of his rights and was given the opportunity to provide a statement. *Id*. Petitioner displayed a good attitude and chose not to make a statement. *Id*. The investigator concluded that based on section 11 of the incident report and supporting documentation that the charges should be upheld. *Id*. Petitioner was to remain in the Montgomery County Jail pending the outcome of the disciplinary process and the investigator forwarded the incident report to the Unit Disciplinary Committee ("UDC") for further disposition. *Id*.

The UDC hearing was held on February 14, 2023. *Id*. at 9. At the hearing, Petitioner stated, "I did not admit to using the cellphone." *Id*. The UDC referred the charges to the Disciplinary Hearing Officer ("DHO") for further proceedings. *Id*.

Petitioner was given notice of the hearing before the DHO and was advised of his rights. *Id*. at 12, 14. Petitioner declined a staff representative and requested a single witness. *Id*. at 14. Petitioner stated that the witness could testify "that I did not ever have possession of the cellphone and that he made calls to my attorney." *Id*. The DHO hearing was held on March 23, 2023. *Id*. at 16–20. Petitioner denied the charge and stated "I gave him the card so he could call my attorney. I gave [redacted] my cash app. I was getting some stamps. I thought I was buying some stamps." *Id*. at 16. Petitioner's witness was transferred shortly after his hearing, so a telephonic statement was obtained. *Id*. at 17. The witness stated, "they all knew was they were getting into. I manned up and took mine when you gave it to me. The want me to save them. They

3

need to save themselves and not pull me into their stuff. I don't know what they want me to say." *Id*.

The DHO reviewed the evidence, including the incident report, the TRU system documentation, the incident report's photographs, and the witness's statements, and found that the act was committed as charged. *Id*. at 17. The DHO's findings were:

> The DHO considered your opinion that the report is not true: You appeared before the DHO and stated, I gave him the card so he could call my attorney. I gave [redacted] my cash app. I was getting some stamps. I thought I was buying some stamps. The DHO found based on the greater weight of the evidence in the Officer's written account of the incident (the reporting staff member is under a legal obligation to report truthful and accurate facts). Program Statement 5270.09, Page 39, It is your responsibility to keep your area free from contraband. Your inmate handbook states under the Searches heading; you will be held responsible for all contents of your locker, room, and on your person. If any unauthorized items, or "CONTRABAND, are found during any of the searches, they will be confiscated, and you will be subject to disciplinary action. The DHO relied on Program Statement 5270.07 which allows the DHO to change the charge when the evidence warrants such action. … The DHO determined that block 11 of the incident report did not adequately support the code 108, Possession of a Hazardous Tool. At the DHO's discretion, the code 108, was changed to Conduct which disrupts the security or orderly running of an institution, code 199 (Most likely) Possession of a Hazardous Tool (cellular telephone SIM card, Bluetooth earpiece, MP3 Player or charger), code 108, to reflect the description of the incident in block #11. The DHO finds you committed the prohibited act of Conduct which disrupts the security or orderly running of an institution, code 199 (Most likely) Possession of a Hazardous Tool (cellular telephone SIM card, Bluetooth earpiece, MP3 Player or charger), code 108. The DHO strongly felt that your action was a circumvention of the monitoring system. By possessing a cellular SIM card, or a telephone charger, allows you to use a cellular charge a cellular phone which allows you to bypass the inmate Telephone System, which is established system for inmates to make phone calls. By bypassing the system, it which staff use to monitor those telephone calls, it enables your call to not be monitored. The DHO found based on the greater weight of the evidence in the Officer's written account of the incident and supporting documents (the reporting staff member is under a legal

> obligation to report truthful and accurate facts). During an investigation, it was concluded that you placed several calls to telephone number 1-850-584-6113 on January 5, 2023, at 2:33 p.m., and 2:35 p.m. Additionally, after a telephone number search, it revealed that you were the only inmate at FPC Montgomery to be associated with this telephone number. Also, during an interview with SIS, you admitted to the investigator of utilizing the cell phone. Furthermore, at the time of the hearing you were not on any restrictions. The DHO felt like there was no need for you to find alternate means to purchase stamps. Lastly, the DHO determined you would have had much to lose by accepting responsibility or being truthful in this matter. Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

(Doc. 9-1 at 18). The report further noted:

> Due to the inmate being departing the institution there was an administrative oversight, which caused a delay in the DHO report being prepared and distributed to the inmate. This delay in the distribution of this DHO report did not hinder the inmate's right to appeal within the twenty calendar days of them receiving this written DHO report.

*Id*. The DHO sanctioned Petitioner with, *inter alia*, 40 days disallowance of good conduct time. *Id*. at 19. The DHO noted the sanctions were imposed because:

> The action or behavior of an inmate to possess or use an unauthorized electronic device (SIM card), cellular phone charger, homemade cellphone charger, in a correctional environment threatens not only the health, safety, and welfare of himself, but that of all other inmates and staff within the institution. The action/behavior on the part of any inmate that possesses an unauthorized items for use with electronic devices jeopardizes the safety, and welfare of not only the inmate involved, but all other inmates and staff alike. This sort of illicit item can be used to trade or barter with amongst inmates, and is often the reason for inmates incurring debts to other inmates. Those who use unauthorized electronic device (cellular telephone charger, SIM card) have become violent toward others, and this behavior cannot be tolerated.

> Loss of privileges was imposed due to your poor institution adjustment and behavior. This privilege is meant for those inmates who follow rules and regulations and do not present a management problem for staff or pose a threat to the security of the institution, self, or others. It is apparent, that by your conduct, you do not value these privileges.

> Good conduct time was disallowed because the severity of the offense and to deter this activity in the future. It is apparent your conduct reflects poor institution adjustment and does not warrant the same consideration for good conduct time as those inmates following the rules and regulations of the bureau of prisons. This is also a mandatory sanction for inmates sentenced under PLRA.
>
> Disciplinary segregation was imposed due to the severity of your offense. It is apparent that your adjustment in population has been poor up to this point. Hopefully, this sanction will influence your future decisions to commit offenses such as these.
>
> These sanctions have been imposed to correct the present inappropriate behavior and deter future behavior of this type. The DHO hopes that the sanctions will motivate you towards more self-discipline in the future.

*Id*. at 19. The DHO report was completed on February 21, 2024, and Petitioner was provided a copy that same day. *Id*. at 20.

## ANALYSIS

### A. Petition under 28 U.S.C. § 2241

Habeas is the "exclusive remedy" for prisoners seeking "immediate or speedier release from confinement." *Skinner v. Switzer*, 562 U.S. 521 (2011); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973). The only relief that can be gained in a habeas action is an immediate or speedier release from custody.[1]

---

[1] *See Rose v. Mitchell*, 443 U.S. 545, 586 (1979) (Powell, J., concurring with the judgment and noting that "the very purpose of the Great Writ is to provide some means by which the legality of an individual's incarceration may be tested."); *see also Cook v. Hanberry*, 592 F.2d 248, 249

## B. Exhaustion of Administrative Remedies

An inmate must exhaust available administrative remedies before seeking relief in a § 2241 proceeding. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 474-75 (11th Cir. 2015). To satisfy the administrative exhaustion requirement, the inmate must use "all steps" that the prison makes available to the inmate, and the inmate must do so "properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate must comply with the prison's deadlines and other procedural rules, including the rules relating to the filing of appeals. *See id.*; *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008). If an inmate fails to exhaust her administrative remedies and the respondent raises the issue in the district court, the district court may not grant relief on the inmate's petition. *See Santiago-Lugo*, 785 F.3d at 475.

There is one important exception to the administrative exhaustion requirement. Although an inmate "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 1174, 136 S. Ct. 1850, 1858 (2016). An administrative remedy is unavailable if it cannot capably be used to obtain some relief. *Id.* at 1859. The Supreme Court has explained that at least three scenarios meet that criteria: (1) where "despite what regulations or guidance materials may promise," the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable

---

(5th Cir. 1979) (noting that the "sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose.")

7

of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.[2]

When a respondent files a motion to dismiss based on an inmate's failure to exhaust administrative remedies, and the inmate claims that her failure should be excused because the administrative remedy process was unavailable to her, the district court must follow a two-step process when ruling on the motion. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First the district court must look to the inmate's and respondent's factual allegations, and if they conflict, take the inmate's version of the facts as true. *Id.* If, in that light, the district court concludes that the inmate failed to exhaust, the petition "must be dismissed." *Id.* But if the district court, after assuming that the inmate's allegations are true, concludes that the petition is not subject to dismissal, it must proceed to the second step and "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* And at that second step,

---

[2] Although the unavailability exception stems from Prison Litigation Reform Act cases, this circuit has applied that exception to cases involving § 2241 petitions - as have other circuits. *See Boz v. United States*, 248 F.3d 1299, 1300 (11th Cir. 2001) (explaining in an immigrant's § 2241 case that "a petitioner need not exhaust his administrative remedies where the administrative remedy will not provide relief commensurate with the claim"); *see also*, *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (per curiam) (noting in a § 2241 case that "[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought"); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of <u>available</u> administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (emphasis added); *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 233 (6th Cir. 2006) (noting that it is "well-settled that a federal prisoner must exhaust all <u>available</u> administrative remedies before filing a federal habeas petition") (emphasis added).

the respondent bears the burden of proving that the inmate has failed to exhaust all available administrative remedies. *Id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1083.

Because Petitioner is a federal prisoner, the BOP's Administrative Remedy Program procedural rules apply. 28 C.F.R. § 542.10(b); *see also United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir. 1990) (explaining that the BOP regulations "set out the procedures that prisoners must pursue prior to seeking relief in a district court").

The Bureau of Prisons provides a three-level administrative grievance procedure for inmate complaints (institutional, regional, and national). 28 C.F.R. § 542.10 - § 542.16. Initially, an inmate may seek resolution of the issues by seeking an informal resolution with staff. *Id.* at § 542.13(a). If unsuccessful, an inmate may then file a formal written complaint with the institution. *Id.* The informal request must be completed, and the formal request filed, within "20 calendar days following the date on which the basis for the Request occurred." § 542.14(a). An appeal must then be taken to the Regional Director. *Id.* at § 542.15. Finally, an inmate should appeal the Regional Director's response to the General Counsel for the BOP. *Id.* at § 542.15(a). Upon issuance of a response from the General Counsel, an inmate's available administrative remedies are deemed exhausted. Each of these steps is generally required to satisfy the exhaustion requirement. However, at any of these steps, if a grievance is filed outside the parameters established by the BOP, the BOP will reject and return the grievance to the inmate. *Id.* § 542.17.

9

On July 5, 2023, Petitioner filed Administrative Remedy No. 1170809-R1 at the Regional Office level appealing his DHO hearing.³ *See* Doc. 1 at 18–19; Doc. 9-1 at 27. On August 4, 2023, the remedy was rejected, and noted that Petitioner must wait for the DHO's decision before appealing to the Regional Office. He was instructed to resubmit his appeal within 20 days of the date he receives the DHO's decision. On September 18, 2023, Petitioner filed Administrative Remedy No. 1170809-A1 at the Central Office level appealing his DHO decision. *See* Doc. 1 at 16–17; Doc. 9-1 at 27. On September 25, 2023, the remedy was rejected, and the Central Office noted that it concurred with the rationale of the Regional Office for rejecting the appeal. (Doc. 1 at 15).

Accepting Petitioner's version of the facts as true, the Petition is subject to dismissal for failure to exhaust administrative remedies. Both of his remedies were rejected as premature. Proper exhaustion means the inmate must comply with the prison's deadlines and other procedural rules, including the rules relating to the filing of appeals. *Woodford*, 548 U.S. at 90; *Bryant*, 530 F.3d at 1378.

However, Petitioner claims that that the administrative program was unavailable to him. The DHO hearing was held on March 29, 2023. (Doc. 9-1 at 16). "Petitioner immediately sought to challenge the validity of his incident report and corresponding sanction, but his attempts to do so were frustrated by the BOP's refusal to provide him a copy of his DHO Report, which they assert is necessary to dispute

---

³ DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located. 28 U.S.C. § 542.14(d)(2).

10

the incident report." (Doc. 1 at 12). When Petitioner initiated this action on January 16, 2024, more than nine months had elapsed following the DHO hearing. Further, throughout his attempt to exhaust, Petitioner stated that despite his multiple requests to be provided with a copy of the DHO report he never received it. *See* Doc. 1 at 16–19. In fact, the DHO report was not even prepared until February 21, 2024, a month after this case was initiated and nearly a year after the hearing. Under the circumstances present in this case, the Court finds that the grievance process was unavailable to Petitioner.

### C. Due Process

Prison disciplinary proceedings are not part of a criminal prosecution, and so the full panoply of rights due to a defendant in a criminal proceeding do not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Yet inmates are entitled to some due process protections. *Id*. The Supreme Court has held that the following minimum due-process procedures are required in a prisoner's disciplinary proceeding: (1) at least 24 hours' notice of the charges so the prisoner can prepare for the hearing; (2) a written statement by the factfinder detailing what evidence was relied on and why disciplinary action was taken; and (3) the qualified right to call witnesses and present documentary evidence, if not "unduly hazardous to institutional safety or correctional goals." *Id*. at 563-66. In determining whether a prisoner has received due process, in the context of revocation of GCT, a court need not examine the entire record, weigh the evidence, or independently assess the credibility of witnesses. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985); *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d

1022, 1028 (11th Cir. 2019). The relevant question is only whether the hearing officer's findings are supported "by some evidence in the record." *Hill*, 472 U.S. at 454. This does not require a robust substantive evaluation of the sufficiency of the evidence behind the administrative decision and is not a guarantee against ill-advised or incorrect decisions. *Yarbrough*, 941 F.3d at 1027. The decision need have only "some basis in fact." *Id.* at 1028 (citing *Hill*, 472 U.S. at 456).

Petitioner was given written notice of the charge and hearings, was given timely opportunity to call witnesses and present evidence and was provided with written findings of fact explaining the DHO's determinations. The Court finds that Petitioner was given fair hearings and received the appropriate procedural protections. On top of Petitioner receiving due process under *Wolff*, the DHO reports show that there was evidence to support the decision. Due process only requires that the determination of the DHO be supported by some evidence in the record. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing the evidence. *Hill*, 472 U.S. at 455–56. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

The DHO based its decision on the incident report and investigations. The Court finds that there is "some evidence" to support the DHO's conclusions. The BOP's regulations provide additional protection by requiring that the DHO base its decision on the "greater weight of the evidence" when there is conflicting evidence on

the record. 28 C.F.R. § 541.14(f). By either standard, the evidence before the DHO was adequate to support the determination that Petitioner committed the offenses and was not actually innocent of the charge.

Petitioner's claim of receiving the DHO report in an untimely manner does not affect the Court's finding that his due process rights were not violated. 28 C.F.R. § 541.8(h) provides:

> Written Report. You will receive a written copy of the DHO's decision following the hearing. The DHO is not required to prepare a verbatim record of the hearing. The DHO's written report will document the following:
> (1) Whether you were advised of your rights during the DHO process;
> (2) The evidence relied on by the DHO;
> (3) The DHO's decision;
> (4) The sanction imposed by the DHO; and
> (5) The reason(s) for the sanction(s) imposed.

28 C.F.R. § 541.8(h). BOP Program Statement 5270.09 states that "[t]he DHO prepares a record of the proceedings. The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security. The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision." BOP Program Statement 5270.09, at 34.[4]

A claim that the BOP violated its own policies or procedures, when those policies and procedures were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas

---

[4] BOP Program Statement 5270.09 is available at https://www.bop.gov/policy/progstat/5270_009.pdf.

petition. *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id*. (citing *Jacks v. Crabtree*, 114 F.3d 983, 985 n.1 (9th Cir. 1997); *Reno v. Koray*, 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules)). Moreover, the use of the word "ordinarily" in terms of giving an "inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision" indicates that the 15-day notice period is not mandatory, and does not in and of itself provide a basis for habeas relief, especially since Petitioner ultimately obtained the opportunity to administratively appeal the decision.

Although an agency's failure to follow its own policies or non-statutory regulations may constitute a deprivation of liberty without due process, an agency's failure to comply in every respect does not in every case require the grant of relief; instead, courts examine the specific facts to determine if the petitioner suffered substantial prejudice, that is, prejudice in the constitutional sense. *See Mullen–Cofee v. I.N.S.*, 976 F.2d 1375, 1380 (11th Cir. 1992) (alien's challenge to deportation decision, on ground that immigration judge failed to comply with applicable regulations, did not entitle him to relief where alien failed to demonstrate that alleged misconduct resulted in the "substantial prejudice" necessary to prevail in due process challenge to deportation proceeding). "It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). Indeed, in the present context of an inmate's delayed receipt of the DHO's report, courts have found that

14

inmates do not suffer any prejudice when they receive the DHO's report months after the hearing, and that such a multi-month delay does not by itself constitute a due process violation. *See, e.g., Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff*."); *see also Morris v. Wilson*, No. 3:11-cv-360, 2012 WL 628612, at *4 (E.D. Va. Feb. 27, 2012) (finding that the petitioner did not establish prejudice from nine-month delay, as "the BOP afforded [the petitioner] the opportunity to appeal, and [he] took advantage of it"). Here, Petitioner failed to show that the BOP staff's failure to comply with the time deadlines set forth in Program Statement 5270.09 prejudiced his ability to challenge the DHO's finding via appeal. Accordingly, the Court finds that Petitioner was afforded sufficient procedural due process.

## CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to enter judgment for Respondent, terminate any pending motions and deadlines, and close the case. Because a federal prisoner does not require a certificate of appealability to appeal the denial of a § 2241 petition, *see Sawyer v. Holder*, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003), the Court will neither issue nor decline certification.

**DONE AND ORDERED** at Tampa, Florida on June 13, 2024.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of Record
Pro Se Party